# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. 1:16-CR-275 |
|---|---|---|
| v. | : | (Chief Judge Conner) |
| CEASAR TORRES-RODRIGUEZ, | : | |
| Defendant | : | |

## MEMORANDUM

Defendant Ceasar Torres-Rodriguez ("Torres-Rodriguez") moves the court to suppress evidence and statements resulting from a probation check at his residence on April 30, 2016. (Docs. 29, 30). The court will deny Torres-Rodriguez's motion.

## I. Findings of Fact[1]

Torres-Rodriguez resides at 1431 Vernon Street in Harrisburg, Pennsylvania. (Tr. 13:5-6, 22:12-21; 38:8-16; see also Doc. 29-3). On or about March 17, 2016, Brandi Williams ("Williams") reported 1431 Vernon Street as her new address to her Dauphin County probation officer.[2] (Tr. 4:16-20, 5:23-25, 17:8-12). When a probationer reports a new address, a probation officer must visit and draw a sketch of the new residence for the probationer's file. (Id. at 6:4-7). Probation officer Daniel Kinsinger ("Officer Kinsinger") visited the 1431 Vernon Street residence

---

[1] The above factual narrative derives from testimonial evidence adduced during the suppression hearing in this matter, together with an exhibit attached to the parties' briefing. The court reporter has provided the court with a transcript of the September 29, 2017 suppression hearing. (Doc. 51). Citations thereto are abbreviated as "Tr."

[2] Counsel and witnesses refer to Williams interchangeably as a probationer and a parolee. (E.g., compare Tr. 11:24 with id. at 13:3-4). For clarity, and for reasons discussed *infra*, the court will refer to Williams as a probationer.

with a second probation officer the following day, March 18, 2016. (Id. at 4:9, 5:16-17, 6:1-7, 17:17-18:9). Officer Kinsinger interacted with Williams and her children at the residence. (Id. at 6:8-12, 18:10-11).

Officer Kinsinger next visited the 1431 Vernon Street residence on April 8, 2016. (Id. at 6:15-24). Williams and Torres-Rodriguez both spoke with Officer Kinsinger at the doorstep of the home. (Id. at 7:1-5). Officer Kinsinger smelled burnt marijuana but did not "push the issue" because no other officers had accompanied him to the residence that day. (Id. at 7:6-14). Williams visited the probation office for her regular check-in on April 21, 2016 and again reported 1431 Vernon Street as her residence. (Id. at 7:16-19).

Officer Kinsinger and police officer Anthony Fiore ("Officer Fiore") conducted a probation check on Williams at the 1431 Vernon Street residence on the evening of April 30, 2016.[3] (Id. at 7:16-22, 8:24-9:1, 29:10-17). The visit was prompted by the burnt marijuana smell detected during the April 8, 2016 visit. (Id. at 7:19-20). Officer Kinsinger knocked and announced himself as probation. (Id. at 9:7-9, 30:6-8). An unidentified Hispanic male answered the door and Officer Kinsinger asked for Williams. (Id. at 9:9, 21:6-8). The Hispanic male indicated Williams was in the living room and stepped aside to allow Officer Kinsinger and Officer Fiore to enter the residence. (Id. at 9:9-11, 21:4-11, 30:9-13, 43:9). Williams said she was in the living room to the left of the front door and Officer Kinsinger

---

[3] Dauphin County probation officers are routinely paired with police officers from the Harrisburg street crimes unit for the purpose of conducting house visits of higher risk offenders. (Id. at 7:24-8:18, 29:4-9). Officer Fiore is assigned to the Harrisburg street crimes unit. (Id. at 28:20-25).

2

proceeded there to make contact with her. (Id. at 9:11-13, 21:13-19, 43:12-13). An unidentified black male was in the living room with Williams. (Id. at 9:20-21). When the black male began walking towards the kitchen, Officers Kinsinger and Fiore asked all three individuals to gather in the living room. (Id. at 9:21-10:1, 30:25-31:5).

Officer Kinsinger informed Williams that he wanted to search the residence because he and Officer Fiore had again detected the smell of burnt marijuana. (Id. at 10:1-6, 10:12-14, 30:23-25). When asked, Williams stated that the only other individuals present were her four children upstairs. (Id. at 10:15-16, 31:6-12). Officer Kinsinger retrieved the children and brought them to the living room. (Id. at 10:18-11:1, 31:13-20). Officer Kinsinger then walked back to the kitchen to check for additional persons. (Id. at 11:4-6, 31:25-32:1). As Officer Kinsinger approached the kitchen, he observed Torres-Rodriguez exiting a bathroom and attempting to leave the residence through a side door. (Id. at 11:6-10). Torres-Rodriguez complied with Officer Kinsinger's directive to stop and return to the living room. (Id. at 11:11-16, 32:1-7). Officer Fiore radioed for backup due to the number of individuals present. (Id. at 12:22-23, 33:3-6).

The three adult males consented to a pat down for weapons. (Id. at 12:6-9, 33:8-12). Officer Kinsinger then informed the group that he wanted to search to determine the cause of the burnt marijuana smell and ensure there were no drugs or weapons in the home. (Id. at 11:25-12:5, 32:12-17). He further stated that 1431 Vernon Street was an approved probation address and the presence of marijuana was a direct violation of Williams' probation. (Id. at 11:24-12:2, 24:21-24, 32:14-17). Officer Kinsinger asked Williams and Torres-Rodriguez for consent to search the

3

home because he knew both were residents. (Id. at 13:2-6, 22:8-21, 32:17-19). Williams and Torres-Rodriguez each verbally consented to the search. (Id. at 13:7-9, 22-24, 32:18-19). Torres-Rodriguez then stated that he had been smoking marijuana when the officers arrived. (Id. at 13:10-12).

Officers Kinsinger and Fiore searched the home with the additional police officers who arrived to assist. (Id. at 33:6-7). Officer Fiore discovered a wallet in the living room containing over $2,300 bundled in $100 increments and identification for Williams and Torres-Rodriguez. (Id. at 14:3-6, 38:13-16, 39:9-18). A street crimes officer searching the first floor bathroom previously occupied by Torres-Rodriguez found an electronic scale in the tank of the toilet. (Id. at 14:9-15, 33:18-21, 34:3-8). The officer also discovered a 32-caliber handgun and a bundle of heroin in the bathroom trash can. (Id. at 14:15-16, 33:22-34:2). All three males were placed in handcuffs. (Id. at 14:18-19, 34:20-21, 34:25-35:4). Williams was not detained because she was maintaining control of the children and was not deemed to be a threat to the officers' safety. (Id. at 34:22-24).

Discovery of illicit items transformed the incident from a probation matter into a police investigation. (Id. at 14:19-20, 15:22-16:3, 34:14-17, 35:8-13). Prior to that discovery, Officer Fiore and the street crimes officers were merely assisting Officer Kinsinger as he conducted his probation function. (Id. at 15:1-21). Officer Fiore advised everyone in the residence that the situation was now characterized as a police investigation. (Id. at 35:15-17). He administered Miranda warnings to all adults in the living room and asked each person individually if they understood the warnings he had just given. (Id. at 35:17-36:4). Williams, Torres-Rodriguez, and the

4

other two adult males each indicated that they understood the warnings. (Id. at 36:5-15). After determining Williams and Torres-Rodriguez physically lived in the home, Officer Fiore explained in detail why he, as a "police entity," wanted to continue searching the property. (Id. at 36:21-25, 38:8-16). He further stated what the officers had discovered in the bathroom and clarified that Williams and Torres-Rodriguez could withhold consent and require the police to seek a warrant. (Id. at 37:2-16). Williams and Torres-Rodriguez consented to the search. (Id. at 37:1, 37:17-19). Officers subsequently discovered several small partially burnt marijuana cigarettes and a single firearm cartridge casing in the home. (Id. at 39:7-8, 40:7-9).

At the conclusion of the search, Officer Fiore reminded the adults of the Miranda warnings and asked if anyone wished to speak to any of the items found during the probation and police searches. (Id. at 40:16-20). Williams denied having any knowledge of the drugs or firearm. (Id. at 40:20-23). Torres-Rodriguez claimed ownership of the firearm but not the heroin or the scale found in the bathroom. (Id. at 40:24-25, 41:6-11).

## II. Procedural History

A federal grand jury returned a three-count indictment against Torres-Rodriguez on September 21, 2016. (Doc. 1). The indictment charges Torres-Rodriguez with one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Count 1); one count of possession of a firearm in violation of 18 U.S.C. § 922(g) (Count 2); and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). (Doc. 1). Torres-Rodriguez pled not guilty to all counts. (Doc. 17).

5

On December 20, 2016, Torres-Rodriguez moved to suppress all evidence found and statements made during the probation check at his residence on April 30, 2016. (Doc. 29). The court convened a suppression hearing on September 29, 2017. (See Docs. 47, 48, 51). The motion is fully briefed and ripe for disposition.

## III. Discussion

Torres-Rodriguez raises two arguments in support of his motion to suppress. *First*, Torres-Rodriguez contends that the warrantless entry into and subsequent search of his home were unlawful and not within the probation exception to the Fourth Amendment. *Second*, he avers that any and all statements made to police were the result of an unlawful detention. The court will address these arguments *seriatim*.

### A. Warrantless Entry and Search

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See U.S. CONST. AMEND. IV; Horton v. California, 496 U.S. 128, 133 (1990). Subject to narrow and limited exceptions, a search without a warrant is unreasonable. See Kyllo v. United States, 533 U.S. 27, 31 (2001); see also United States v. Whitted, 541 F.3d 480, 484 (3d Cir. 2008). The government bears the burden of demonstrating by a preponderance of the evidence that an exception to the Fourth Amendment's warrant requirement existed at the time of the search. See Vale v. Louisiana, 399 U.S. 30, 34 (1970); United States v. Donahue, 764 F.3d 293, 300 (3d Cir. 2014).

A probation officer may enter the home of a third party to confirm whether the probationer has violated a condition of probation if the officer has probable

6

cause to believe that the probationer resides there. Shea v. Smith, 966 F.2d 127, 131 (3d Cir. 1992). Law enforcement may conduct a warrantless search of a probationer's home if the probationer is subject to a search condition and the officer has reasonable suspicion that the probationer is engaging in unlawful activity in the home.[4] United States v. Williams, 417 F.3d 373, 376 & n.1 (3d Cir. 2005) (citing United States v. Knights, 534 U.S. 112, 121 (2001); Griffin v. Wisconsin, 483 U.S. 868, 871-72 (1987)). Courts must consider the totality of the circumstances in determining whether an officer has "a particularized and objective basis for suspecting legal wrongdoing." Id. at 376 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Torres-Rodriguez contends that the warrantless entry into his home and search thereof violated the Fourth Amendment. (Doc. 30 at 3-7). Specifically, he avers that Officer Kinsinger lacked probable cause to believe that Williams resided at 1431 Vernon Street and that Williams did not have authority to consent to search of the property. (Id. at 6-7). We disagree.

---

[4] The record is unclear as to whether Williams was a probationer or a parolee during the relevant time. The Third Circuit predicted that Pennsylvania would construe the standard Pennsylvania Board of Probation and Parole consent to search form to include "an implicit requirement that any search be based on reasonable suspicion." United States v. Baker, 221 F.3d 438, 448 (3d Cir. 2000), as amended (Sept. 21, 2000); see also United States v. Strickland, 237 F. App'x 773, 777 (3d Cir. 2007) (nonprecedential). In 2006, the Supreme Court held that the Fourth Amendment does not prohibit law enforcement from conducting a suspicionless search of a parolee. Samson v. California, 547 U.S. 843, 857 (2006). Pennsylvania's decision to impose a higher burden on parole officers seeking to search a parolee does not conflict with Samson. See United States v. Rivera, 727 F. Supp. 2d 367, 373-75 (E.D. Pa. 2010). Disposition of the matter *sub judice* would remain the same under the lower burden articulated in Samson.

Officer Kinsinger reasonably believed Williams resided at 1431 Vernon Street. Williams reported this address as her residence to the probation office on March 16, 2016 and again on April 21, 2016. (Tr. 5:23-25, 7:16-19). Officer Kinsinger interacted with Williams at 1431 Vernon Street on two separate occasions. (Id. at 6:8-12, 18:10-11, 6:21-7:2). Williams' four children were present at the home during the March 18, 2016 check-in. (Id. at 6:11-12). Torres-Rodriguez was aware that the probation office believed Williams resided at 1431 Vernon Street because he engaged with Officer Kinsinger during the April 8, 2016 visit. (Id. at 7:1-5). Officer Kinsinger was therefore permitted to enter the 1431 Vernon Street residence to confirm whether Williams had violated a condition of her probation. See Shea, 966 F.2d at 131; see also United States v. Murray, 821 F.3d 386, 391 (3d Cir.), cert. denied, 137 S. Ct. 244 (2016).

Torres-Rodriguez's argument that Officer Kinsinger lacked consent to search the premises is similarly misplaced. The odor of marijuana alone, if articulable and particularized, establishes reasonable suspicion. United States v. Ramos, 443 F.3d 304, 308-09 (3d Cir. 2006). Officer Kinsinger suspected Williams had violated the terms of her probation when he smelled burnt marijuana at the doorway during the April 8, 2016 visit. (Tr. 7:6-14). During a return visit on April 30, 2016, both Officer Kinsinger and Officer Fiore detected the smell of burnt marijuana from the moment they reached the threshold of the 1431 Vernon Street home. (Id. at 10:1-6, 12-14, 30:23-25). Officer Kinsinger had a particularized and objective basis for suspecting

Williams violated her probation. See Williams, 417 F.3d at 376. Consequently, Officer Kinsinger did not need consent to search the residence.[5]

    **B.**    **Statements Made After Search and Seizure**

Torres-Rodriguez avers that any and all statements made after the search of his 1431 Vernon Street residence and his subsequent detention must be excluded. (Doc. 30 at 7-8). Verbal evidence directly derived from unlawful entry and arrest is fruit of the illegality and warrants exclusion. United States v. Parson, 599 F. Supp. 2d 592, 610 (W.D. Pa. 2009) (citing Wong Sun v. United States, 371 U.S. 471, 484-86 (1963). Torres-Rodriguez does not challenge the voluntariness of his statements made after Officer Fiore provided Miranda warnings. (Doc. 30 at 7). In light of our conclusion that the probation exception applies to Officer Kinsinger's entry into and search of the 1431 Vernon Street residence, Torres-Rodriguez cannot invoke the exclusionary rule. His statements to law enforcement after the search and his detention were lawfully obtained.

---

[5] Assuming *arguendo* Officer Kinsinger did not have reasonably articulable suspicion that unlawful activity was occurring in the residence, the evidentiary record establishes that Officer Kinsinger obtained consent from Williams and Torres-Rodriguez before proceeding with the probationary search. (Tr. 13:7-9, 22-24, 32:18-19); see United States v. Stabile, 633 F.3d 219, 231 (3d Cir. 2011); United States v. Price, 558 F.3d 270, 278 (3d Cir. 2009).

**IV.    Conclusion**

The court will deny Torres-Rodriguez's motion (Doc. 29) to suppress evidence and statements.  An appropriate order shall issue.

                                      /S/ CHRISTOPHER C. CONNER
                                      Christopher C. Conner, Chief Judge
                                      United States District Court
                                      Middle District of Pennsylvania

Dated:    December 29, 2017